UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| TQP DEVELOPMENT, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:08-CV-471-WCB |
| MERRILL LYNCH & CO., INC., et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the motions of TQP Development, LLC, to Exclude Opinions of Defendants' Damages Expert on Non-Infringing Alternatives and for Partial Summary Judgment on the Issue of Non-Infringing Alternatives (Dkt. No. 528). After reviewing the parties' submissions and hearing argument from counsel on July 26, 2012, the Court DENIES TQP's motions.

**I.   Background**

TQP sued TD Ameritrade Holding Corp. and TD Ameritrade, Inc., (collectively, "TD Ameritrade") for infringement of U.S. Patent No. 5,412,730 ("the '730 patent"), entitled "Encrypted Data Transmission System Employing Means For Randomly Altering The Encryption Keys." As part of its damages defense, TD Ameritrade has asserted that there were non-infringing alternative cipher algorithms that would impact any hypothetical negotiation between the parties. The parties have stipulated that TD Ameritrade's systems had access to and were capable of implementing these alternatives. Dkt. No. 540-4. TD Ameritrade relies on the testimony of W. Todd Schoettelkotte, its damages expert, to show the cost of implementation.

1

## II.   Partial Summary Judgment

TQP asserts that TD Ameritrade has failed to provide evidence sufficient to avoid summary judgment that the non-infringing alternatives disclosed by TD Ameritrade's experts were not available on the browsers of TD Ameritrade's customers in late 2004, the date of the hypothetical negotiation. Although the parties agree that TD Ameritrade had access to alternative cipher algorithms and was capable of using those alternatives, see Dkt. No. 540-4; Dkt. No. 528 at 3, TQP argues that without evidence that TD Ameritrade's customers could also implement those ciphers, those alternatives were not "available."

"[T]o be an acceptable non-infringing substitute, the product or process must have been available or on the market at the time of infringement." Grain Processing Corp. v. Am. Maize-Prods. Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999). In determining whether the alternative product is available, the court may consider whether "(1) the defendant could readily obtain all of the material needed to implement the non-infringing alternative; (2) the non-infringing alternative was well known in the field at the time of infringement; and (3) the defendant had all of the necessary equipment, know-how, and experience to use the non-infringing alternative." LaserDynamics, Inc. v. Quanta Computer, Inc., No. 2:06-CV-348, 2011 WL 197869, at *3 (E.D. Tex. Jan. 20, 2011), citing Grain Processing, 185 F.3d at 1353-54.

Given the parties' stipulation, the Court need only consider whether the alternative cipher algorithms were available to TD Ameritrade's customers in 2004. TD Ameritrade's expert has reported that AES and 3DES were publicly available at that time. Dkt. No. 528-13. TD Ameritrade has also provided documentary evidence that 3DES was incorporated into customers' computers as of 2002. See Dkt. No. 540-8. That evidence indicates that TD Ameritrade's customers could easily obtain the algorithm necessary to implement a non-

2

infringing alternative. The fact that the ciphers were on the market and that at least 3DES was available on customers' computers as of 2004 suggests that an alternative algorithm was available to customers at the time of the hypothetical negotiation.

It is a separate question whether availability on the Internet or as part of an operating system is equivalent to availability in a browser. That issue implicates the third part of the LaserDynamics analysis referred to above because, even if TD Ameritrade's customers could easily acquire a copy of the alternative ciphers, the ciphers would not be "available" as non-infringing alternatives if the customers lacked the knowledge to use them. That factual question, whether customers had the know-how to use alternative cipher algorithms they could retrieve, is a material factual issue that cannot be resolved on this summary judgment record. Therefore, TQP's motion for partial summary judgment on non-infringing alternatives is denied.

### III.   Exclusion of Expert Testimony

TQP asserts that TD Ameritrade's expert, Mr. Schoettelkotte, has no valid support for his conclusion that alternative cipher algorithms were available and commercially acceptable. TQP also contends that Mr. Schoettelkotte's estimate of the cost of those algorithms was without sufficient basis in fact and based on faulty methodology.

As to TQP's first argument, the dispute lies in whether there is support for Mr. Schoettelkotte's conclusion that the non-infringing alternatives were available on the browsers of TD Ameritrade's customers in late 2004, the date of the hypothetical negotiation. In light of the Court's previous discussion of TD Ameritrade's evidence of availability of non-infringing alternatives, it is evident that Mr. Schoettelkotte has provided a sufficient factual basis for his opinion that TD Ameritrade's customers had available to them the alternative cipher algorithms.

As to its second argument, TQP asserts that Mr. Schoettelkotte improperly calculated the cost of implementing the alternative cipher algorithms. TQP relies heavily on <u>Apple Inc. v. Motorola, Inc.</u>, No. 1:11-CV-8540, ECF No. 956 (N.D. Ill. May 22, 2012), a case in which the court struck a damages expert because he reported and improperly manipulated a cost number provided by a single employee. Contrary to TQP's assertion, the fact that a party relies on a single employee is not dispositive; instead, the ultimate question is whether the expert's opinion is sufficiently reliable and relevant. <u>See</u> <u>United States v. Valencia</u>, 600 F.3d 389, 424 (5th Cir. 2010). In any event, Mr. Schoettelkotte relied on more than a single TD Ameritrade employee in reaching his cost estimate, so the <u>Apple</u> case is inapplicable here.

Mr. Schoettelkotte began his analysis of the cost of implementing a non-infringing alternative cipher algorithm by consulting Dr. Paul Clark, TD Ameritrade's non-infringement expert, and Richard James, TD Ameritrade's senior manager of network engineering. Dkt. No. 528-2 at 4; Dkt. No. 528-3 at 61:11-64:12 (noting reliance on the deposition of TQP's damages expert, Dr. Stephen Becker). Mr. Schoettelkotte also reviewed documentary evidence received from TD Ameritrade's lawyers and engineers. Dkt. No. 528-3 at 65:19-66:17; Dkt. No. 540-9 at 1-51; <u>see generally</u> Dkt. No. 528-2 at 8-12. He also relied on various public documents though he was unable during his deposition to specifically identify those documents. Dkt. No. 528-3 at 79:5-81:7. Mr. Schoettelkotte's reliance on these various sources indicates that his methodology was reliable and reproducible.

TQP places much weight on Mr. Schoettelkotte's inability to identify the specific public documents on which he relied. But it is clear from the transcript that Mr. Schoettelkotte merely stated that he would be "guessing" if he tried to identify specific documents by looking only at their titles. Dkt. No. 528-3 at 79:5-81:7. Mr. Schoettelkotte stated that he would feel

4

comfortable answering the question after he had a chance to review the actual documents. At that point, TQP's attorney moved to another line of questions. Id. Mr. Schoettelkotte's inability during his deposition to identify particular documents by their titles has no effect on the admissibility of his testimony.

Mr. Schoettelkotte's cost estimate of approximately $900,000 to $1,000,000 also has a sufficient basis in fact. In deriving that range, Mr. Schoettelkotte combined the estimated cost of implementing the change, approximately $100,000, with the estimated cost of upgraded equipment that might be necessary to maintain transaction speed and efficiency, $800,000 to $900,000. Dkt. No. 528-2; Dkt. No. 540 at 3-4. The first number came from discussions with Mr. James. See Dkt. No. 528-2 at 6; Dkt. No. 528-3 at 83:6-85:24. The second came from discussions with Mr. James and invoices for previously purchased equipment. See Dkt. No. 528-2 at 6; Dkt. No. 528-3 at 87:19-92:23; Dkt. No. 540-9 at 1-51. Thus, Mr. Schoettelkotte's cost estimate is sufficiently grounded in fact to justify admitting his testimony.

**IV. Conclusion**

For the foregoing reasons, the Court DENIES TQP's Motions to Exclude Opinions of Defendants' Damages Expert on Non-Infringing Alternatives and for Partial Summary Judgment on the Issue of Non-Infringing Alternatives (Dkt. No. 528).

It is so ORDERED.

SIGNED this 10th day of August, 2012.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE