UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| TQP DEVELOPMENT, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:08-CV-471-WCB |
| MERRILL LYNCH & CO., INC., et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the parties' motions to exclude the testimony of certain experts under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). After reviewing the parties' submissions and hearing argument from counsel on July 26, 2012, the Court disposes of the pending motions as follows:

(1) Plaintiff's Motion to Exclude Opinions of TD Ameritrade's Invalidity Expert on the Alleged RC4 Prior Art and his Conclusions on Obviousness (Dkt. No. 526): The Court DENIES the motion in part and holds over the motion in part.

(2) Defendants' Motion to Exclude Opinions of Plaintiff's Damages Expert Stephen L. Becker (Dkt. No. 510): The Court DENIES the motion.

**I.      Background**

TQP Development, LLC, sued TD Ameritrade Holding Corp. and TD Ameritrade, Inc., (collectively, "TD Ameritrade") for infringement of U.S. Patent No. 5,412,730 ("the '730 patent"), entitled "Encrypted Data Transmission System Employing Means For Randomly

1

Altering The Encryption Keys." TD Ameritrade asserts, in part, that the '730 patent is invalid as anticipated and obvious over the RC4 cipher algorithm.

## II.     General Legal Principles

Federal Rule of Evidence 702 allows a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion or otherwise if: "(a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

The Supreme Court has interpreted Rule 702 to require a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999); Daubert, 509 U.S. at 592-93. District courts are accorded broad discretion in making Rule 702 determinations of admissibility. Kumho Tire, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. United States v. Valencia, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the court's role under Daubert is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently

reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. See Micro Chem., Inc. v. Lextron, Inc., 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); Pipitone v. Biomatrix, Inc., 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a Daubert hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in Daubert, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." See also Mathis v. Exxon Corp., 302 F.3d 448, 461 (5th Cir. 2002).

### III. Plaintiff's Motion to Exclude Opinions of TD Ameritrade's Invalidity Expert on the Alleged RC4 Prior Art and his Conclusions on Obviousness (Dkt. No. 526)

TQP moves to exclude the testimony of TD Ameritrade's invalidity expert, Dr. James Olivier, regarding the RC4 cipher algorithm and his conclusions as to obviousness under 35 U.S.C. § 103. TQP asserts that Dr. Olivier failed to analyze the RC4 pseudo-source code (i.e., the English language explanation of the RC4 algorithm) with regard to all limitations of claim 1, but simply assumed that some limitations were met. TQP also argues that Dr. Olivier failed to consider secondary considerations, and in particular settlement licenses to the '730 patent, in reaching his conclusion that the patent was obvious.

1. In the briefing on the motions for summary judgment related to the RC4 cipher algorithm, TD Ameritrade relied on the pseudo-source code explanation of the RC4 algorithm. See Dkt. No. 332-7 at 3; Dkt. No. 332-10. TQP asserts that Dr. Olivier did not compare that

3

pseudo-source code explanation to the claim limitations but instead simply assumed that certain claim limitations were met.

It is undisputed that Dr. Olivier did not analyze the RC4 pseudo-source code. Dkt. No. 526-2 at 109:3-110:14. However, experts are allowed to rely on assumptions as part of their opinions, as long as those assumptions are supported by evidence at trial. See Micro Chem., 317 F.3d at 1392; Cashman v. Allied Prods. Corp., 761 F.2d 1250, 1255 (8th Cir. 1985); Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc., 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001); see also Peteet v. Dow Chemical Co., 868 F.2d 1428, 1432 (5th Cir. 1989). In this case, TD Ameritrade will be asking Dr. Olivier to assume that TQP is correct in asserting that the '730 patent is infringed by the use of the RC4 encryption algorithm. Because it is permissible for TD Ameritrade to elicit expert testimony based on factual assumptions, if it is able to support those assumptions with evidence at trial, Dr. Olivier's testimony is admissible on that theory; if the assumptions on which his testimony is based turn out to be unsupported, counsel may request that the Court revisit the issue at trial.

TQP further argues that Dr. Olivier's failure to perform a limitation-by-limitation analysis of the pseudo-code requires that his testimony be excluded. TD Ameritrade again counters by pointing to TQP's infringement contentions as supporting Dr. Olivier's testimony about the RC4 algorithm. As an initial matter, TQP asserted infringement through TD Ameritrade's use of Secure Sockets Layer/Transport Layer Security and RC4. See, e.g., Dkt. No. 332-4. For certain of the claim limitations, TQP relies solely on TD Ameritrade's use of RC4 as evidence of infringement. E.g., id. at 20-23, 25-29, 30. By local rule, TQP is limited to the infringement theories it sets forth in its infringement contentions. See Linex Techs. Inc. v. Belkin Int'l, Inc., 628 F. Supp. 2d 703, 710 (E.D. Tex. 2008); see generally Computer

4

Acceleration Corp. v. Microsoft Corp., 503 F. Supp. 2d 819, 822-823 (E.D. Tex. 2007).  Thus, to prove its infringement case, TQP must establish that TD Ameritrade's systems used RC4.

TD Ameritrade is relying on the evidence it expects to be elicited during TQP's case, and its own evidence that the RC4 algorithm was on sale more than one year prior to the '730 patent's filing date, to show that certain limitations of claim 1 of the '730 patent are subject to the on-sale bar provision of 35 U.S.C. § 102(b).  Under those circumstances, it was permissible for Dr. Olivier to assume that certain limitations of claim 1 would be met by the RC4 cipher, and it is therefore unnecessary for Dr. Olivier to explain on a limitation-by-limitation basis why the language of claim 1 of the '730 patent reads on the RC4 algorithm.

To the extent that TQP is arguing that Dr. Olivier improperly relied on the pseudo-source code explanation to prove invalidity, it is clear that Dr. Olivier relied on assumptions presented to him by TD Ameritrade's counsel and evidence related to the RC4 algorithm other than the pseudo-source code explanation.  See, e.g., Dkt. No. 542-3.  Thus, the Court denies TQP's motion to exclude Dr. Olivier's testimony on that ground.

2. TQP next moves to strike Dr. Olivier's opinion on obviousness because he did not consider, as a secondary consideration indicative of non-obviousness, that there have been "numerous licenses of the patent-in-suit, which indicate commercial success."

Secondary considerations, when present, bear on the ultimate legal question whether an invention is invalid for non-obviousness.  Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17-18 (1966).  In the process of assessing whether an invention is invalid for non-obviousness, secondary considerations must be taken into account along with all the other pertinent factors that bear on obviousness.  Id.; Transocean Offshore Deepwater Drilling, Inc. v. Maret Contrs. USA, Inc., 617 F.3d 1296, 1303 (Fed. Cir. 2010).

While that much is indisputable, it does not lead to the conclusion that Dr. Olivier's failure to address the secondary consideration highlighted by TQP renders his testimony inadmissible. Any failure to address or give weight to particular factors that may be regarded as bearing on obviousness go to the weight of the expert's testimony, not its admissibility. The Court rules that Dr. Olivier's testimony, to the extent it may assist the jury in understanding the scope of the prior art and the differences between that art and the claimed subject matter from the viewpoint of a person of ordinary skill in the field, is admissible over a Daubert challenge. To the extent that TQP is requesting that the Court rule at this juncture that Dr. Olivier's testimony will not be of assistance to the jury, that portion of TQP's motion is denied.

To the extent that TQP is arguing that Dr. Olivier's testimony is inadmissible as a matter of law because he failed to advert to secondary consideration evidence after TQP alerted TD Ameritrade that it intended to rely on secondary consideration evidence, we reject TQP's argument. Although the burden of proof as to obviousness is always on the accused infringer, the burden of production with regard to secondary consideration evidence rests on the patentee. See Crocs, Inc. v. Int'l Trade Comm'n, 598 F.3d 1294, 1310-11 (Fed. Cir. 2010) (requiring that the patentee "shows both that there is commercial success" and nexus before "the burden of coming forward with evidence in rebuttal shifts to the challenger"); Ecolochem, Inc. v. S. Cal. Edison Co., 227 F.3d 1361, 1376 (Fed. Cir. 2000) (producing evidence of secondary considerations was plaintiff's burden); Demaco Corp. v. F. Von Landroff Licensing Ltd., 851 F.2d 1387, 1392-93 (Fed. Cir. 1988) (patentee has burden of coming forward with evidence of secondary considerations and their nexus to the patented invention); see also In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig., 676 F.3d 1063, 1075, 1078-79 n.5 (Fed. Cir. 2012). In light of the plaintiff's burden to come forward with secondary

consideration evidence, the failure of the defendant's expert to address secondary consideration evidence in the first instance provides no basis for excluding his testimony on obviousness.

### IV.    Defendants' Motion to Exclude Opinions of Plaintiff's Damages Expert Stephen L. Becker (Dkt. No. 510)

TD Ameritrade seeks to exclude the testimony of TQP's damages expert, Dr. Stephen Becker because, according to TD Ameritrade, Dr. Becker's choice of a royalty base for his damages calculation is contrary to the evidence on which he relies and thus results in a flawed methodology for calculating damages.

Dr. Becker began his damages analysis by looking to various license agreements entered into by RSA Data Security, Inc., the owner of the RC4 cipher. See Dkt. No. 510-2 at 83-84. The royalties in those agreements were based on "the price paid for the public key generation technology," which Dr. Becker assumed was comparable to the '730 patent. Id. at 83. He then modified the royalty rate in those agreements by changing the per-unit royalty base to a per-login royalty base. See Dkt. No. 534-2 at 91 (describing settlement agreements that include a per-transaction royalty similar to the per-login royalty used by Dr. Becker). In other words, instead of looking to the per-unit licensing fee for each physical device that can perform certain steps of the invention, Dr. Becker predicated his royalty base on the number of times an allegedly infringing act occurred, i.e., the number of logins that occurred using TD Ameritrade's websites. In so doing, he looked to the kinds of agreements typically used in the communications industry. See Dkt. No. 534-2 at 87-91. Whether his choice of a royalty base is an appropriate one is a question for trial, not to be decided by this Court on a motion to exclude his testimony altogether.

The evidence shows that TD Ameritrade tracks a limited number of performance metrics related to its systems. The most relevant historical information on the allegedly infringing

7

conduct, according to Dr. Becker, is the number of successful logins. Dkt. No. 534-6 at 169:6-20. Because that metric has not been shown at this point to be an unreasonable proxy for the degree of infringement, the Court is not prepared to exclude Dr. Becker's testimony on the ground that he has used an inappropriate royalty base.

While the per-login royalty base used by Dr. Becker is not the same as the one set forth in RSA Data Security's licenses, that does not make it inappropriate as a royalty base. Dr. Becker explained his reasons for choosing a per-login royalty in his report and during his deposition. See Dkt. No. 510-3 at 228:6-21, 231:15-233:21; Dkt. No. 534-3 at 238:24-241:4; see also Dkt. No. 534-2. Whether his methodology and the reasons for departing from the per-unit royalty in the prior licenses are persuasive is a question for the jury. It is enough that Dr. Becker has expressed his opinion in a manner that could be helpful to the jury and that his opinion is relevant and supported by evidence.

**V.     Conclusion**

For the foregoing reasons, the Court DENIES in part and holds over in part TQP's motion and DENIES TD Ameritrade's motion.

It is so ORDERED.

SIGNED this 10th day of August, 2012.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE